ROGERS, J.
 

 Plaintiff appeals from a judgment rejecting his claim for damages for the alleged destruction of a certain gas well and the alleged confiscation of the drilling equipment, in which he owned an undivided one-half interest.
 

 There is the usual conflict of testimony on the controverted points, but we think the record, on the whole, establishes the following facts, viz.:
 

 In November, 1928, the plaintiff, S. H. Gardner (Sadovnick, Anglicized), acting through his brother, Ben Sadovnick, acquired the Lawless oil and gas lease in Panola county, Texas. George Despot, the defendant, advanced the money, $17,500, to purchase the lease and to drill a well on the leased property. The agreement between plaintiff and defendant was that the lease would be owned by them jointly, and that the money advanced by defendant would, to the extent of one-half thereof, be promptly reimbursed him by plaintiff. Plaintiff failed to reimburse defendant, but in January, 1929, in compliance with defendant’s repeated demands, he assigned a
 
 *660
 
 one-half interest in the lease to defendant, and defendant in turn assigned to plaintiff a one-half interest in the drilling equipment. Plaintiff also acknowledged an indebtedness to defendant of $8,750, as his share of the cost of the lease and the well, and executed an assignment of his interest in gas runs from the Clara Craven lease, in Panola county, Tex., as security for the payment of said indebtedness.
 

 The defendant, a restaurant proprietor of the city of Shreveport, is inexperienced in the development of oil and gas leases, and he intrusted the management of the lease in question and the drilling operations thereon to plaintiff, acting through his brother and agent, Ben Sadovnick. Under the direction and control of Ben Sadovnick, a well was drilled to the depth of 2,804 feet, at which depth a small quantity of gas was produced during a period of seven days, when the well watered up. The well was then tested, and made so much water that it had to be disconnected. A heavy bailer fell into it for a distance of more than 2,000 feet, and could not be removed. In that condition the well was practically worthless for commercial purposes, and was abandoned.
 

 In March, 1929, defendant had an offer from one T. C. Adams to purchase his one-half interest in the property for $2,000. Defendant, in accordance with their agreement, then offered to sell his interest to plaintiff for the same amount. Gardner wired an acceptance of the offer, stating that his agent would call on defendant to consummate the transaction. But the agent never called on defendant, and the proposed sale was not effected. Later, defendant received an offer from Adams to purchase a certain drill stem and equipment for $2,000. He consulted his attorney in Texas, informing him of the facts, and was advised that he could make the sale. Defendant did this, crediting plaintiff with $1,000 on his indebtedness to him. A few months thereafter this suit was filed.
 

 Plaintiff’s demand is embraced in an original and four supplemental petitions. I-Iis suit is to recover one-half the value of the equipment sold, one-half the value of the well, one-half anticipated profits, and punitive damages, aggregating the
 
 sum of
 
 $30,-540.62.
 

 Plaintiff presents and argues in his original brief eleven distinct specifications of error alleged to have been committed by the judge of the district court. We do not consider it necessary to discuss these specifications in detail. We- do not find that the judge erred in any of his rulings, refusing to permit a witness to be recalled, allowing a witness to testify, and in overruling and sustaining objections to the admission of testimony. And plaintiff’s complaint that the judge failed to properly weigh certain testimony will be disposed of in the general discussion of the case.
 

 Plaintiff’s demands embrace two fundamental proposition's, viz. first, defendant’s alleged negligence in dismantling the well and the alleged damage resulting therefrom; second, defendant’s alleged unlawful sale of the drill stem and equipment. All plaintiff’s other demands are dependent upon, and incidental to, these fundamental demands.
 

 Plaintiff argues, in support of the first fundamental proposition, that defendant was negligent in not using back-up tongs to remove the “Christmas Tree” and in failing to fill the well with mud and to place a bull plug on it. But plaintiff’s contention that no back-up tongs were used in dismantling the well is based purely on an assumption. This assumption is founded on the testimony of his witnesses that the “nipple” and the “Christ
 
 *662
 
 mas Tree” had been painted green, and that an examination of the nipple some time after the well had been dismantled failed to disclose any marks showing the use of back-up tongs. Against this testimony is the direct testimony of defendant’s witnesses that the back-up tongs were used; that they were used on the six-inch collar and not on the nipple; and that the nipple had not been painted at the time the “Christmas Tree” was removed. As to plaintiff’s complaint that the well was not properly closed, the evidence discloses that the well was plugged with a pole or tree driven into the casing, which appears to be the accepted method prevailing in that field. It is only when the casing is pulled that it becomes necessary to obtain a permit and to fill up a well with heavy mud and plug it with a bull plug.
 

 Plaintiff contends that the well could have been made into a valuable producing well by, the installation of a siphon or by plugging it back to 2,300 feet and getting into another sand. Apart from the fact that no duty rested upon defendant to do either of these things, the evidence shows that it would have been highly improbable to successfully operate a siphon, and that it would have been utterly useless to attempt to plug back to the 2,300 foot sand, because, due to the failure to keep any line measurements, the location of the sand was unknown.
 

 In dealing with the second fundamental proposition, we find that defendant sold- the drill stem and other equipment to Adams only after he had been advised by his Texas attorney that he could lawfully do so. Unquestionably, therefore, whether the advice was correct or not, defendant’s good faith in the transaction cannot be impugned. The well was worthless. The drilling rig had been torn down by Ben Sadovnick, and the drill stem and other equipment was lying around exposed to the action of the elements. The property was not sacrificed, but was sold for all that it was fairly worth. Plaintiff received due credit for one-half of the proceeds of the sale, which was a real, and not a fictitious, ■transaction, as alleged by plaintiff.
 

 For the reasons assigned, the judgment appealed from is affirmed.